UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SECURITY PEOPLE, INC., <br>     Plaintiff, <br> v. <br> OJMAR US, LLC, <br>     Defendant. | Case No. 14-cv-04968-HSG <br><br> **ORDER GRANTING MOTION TO STAY** <br><br> Re: Dkt. No. 38 |

On April 30, 2015, Defendant Ojmar US, LLC ("Ojmar") filed a motion to stay the case pending completion of *inter partes* review ("IPR") proceedings. Dkt. 38 ("Mot."). The Court, in its discretion, finds this matter suitable for resolution without oral argument. *See* Civ. L.R. 7-1(b). For the reasons articulated below, the motion is **GRANTED**.

## I. BACKGROUND

### A. America Invents Act

By enacting the Leahy-Smith America Invents Act ("AIA"), Congress sought to "establish a more efficient and streamlined patent system that will improve patent quality and limit unnecessary and counterproductive litigation costs" and "to create a timely, cost-effective alternative to litigation." 77 Fed. Reg. 48,680-01 (Aug. 14, 2014) (to be codified at 37 C.F.R. § 42.100 *et seq*). To that end, AIA created the IPR procedure, by which the Patent and Trademark Office's ("PTO") Patent Trial and Appeal Board ("PTAB") may review the patentability of one or more claims in a patent. *See* 35 U.S.C. §§ 311-319. IPR replaces the previous *inter partes* reexamination procedure and converts the process from an examinational to an adjudicative one. *See Abbott Labs. v. Cordis Corp.*, 710 F.3d 1318, 1326 (Fed. Cir. 2013).

IPR allows any party other than the patent owner to challenge patent validity under 35 U.S.C. § 102 or § 103 "on the basis of prior art consisting of patents or printed publications." 35

1  U.S.C. § 311(a)-(b).  The petitioning party must establish "a reasonable likelihood that the
2  petitioner would prevail with respect to at least [one] of the claims challenged in the petition" in
3  order for the PTO to institute IPR.  35 U.S.C. § 314(a).  If the PTO decides to institute IPR, the
4  proceeding is conducted before a panel of three technically-trained Administrative Patent Judges
5  of the PTAB.  *See* 35 U.S.C. §§ 6(a)-(c), 316.  Following a final determination, the petitioning
6  party is estopped from asserting invalidity during a later civil action "on any ground that the
7  petitioner raised or reasonably could have raised during" the IPR.  35 U.S.C. § 315(e)(2).

### B. This Litigation

Plaintiff Security People, Inc. ("SPI") filed its complaint against Ojmar on November 10, 2014, alleging infringement of U.S. Patent No. 6,655,180 (the '180 Patent).  Dkt. No. 1.  Ojmar filed its answer and asserted six counterclaims on March 4, 2015.  Dkt. No. 21.  On March 30, 2015, SPI moved to dismiss Ojmar's first and sixth counter claims and to strike Ojmar's fourth and fifth affirmative defenses.  Dkt. No. 28.  Ojmar filed a petition for IPR of the '180 Patent in late April of 2015, Dkt. No. 39-1, and moved to stay this case pending the outcome of that petition on April 30, 2015, Dkt. No. 38.  The PTAB's decision concerning whether to institute proceedings is expected no later than October 2015.  Mot. at 2.

This case has just begun.  The first Case Management Conference in this action was held on April 1, 2015.  Dkt. No. 31.  SPI's served its infringement contentions fourteen days after that date.  *See* Pat. L.R. 3-1.  Ojmar's invalidity contentions are due on May 29, 2015.  *See id*. at 3-3.  The claim construction briefing process is scheduled to begin in mid-June.  Dkt. No. 32.

## II. DISCUSSION

### A. Legal Standard

"Courts have inherent power to manage their dockets and stay proceedings, including the authority to order a stay pending conclusion of a PTO reexamination."  *Ethicon, Inc. v. Quigg*, 849 F.2d 1422, 1426-27 (Fed. Cir. 1988) (citations omitted).  While courts are "under no obligation to stay proceedings pending parallel litigation in the PTAB, . . . judicial efficiency and the desire to avoid inconsistent results may, after a careful consideration of the relevant factors, counsel in favor of a limited stay, even before the PTAB has acted on a petition for IPR."  *Delphix Corp. v.*

*Actifio, Inc.*, No. 13-cv-04613-BLF, 2014 WL 6068407, at *2 (N.D. Cal. Nov. 13, 2014). Indeed, some courts in this district have recognized "a liberal policy in favor of granting motions to stay proceedings pending the outcome of USPTO reexamination or reissuance proceedings." *Pragmatus AV, LLC v. Facebook, Inc.*, No. 11-cv-02168-EJD, 2011 WL 4802958, at *2 (N.D. Cal. Oct. 11, 2011).

Courts consider three factors when determining whether to grant a stay pending IPR: "(1) whether discovery is complete and whether a trial date has been set; (2) whether a stay will simplify the issues in question and trial of the case; and (3) whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party." *Evolutionary Intelligence, LLC v. Facebook, Inc.*, No. 13-cv-04202-SI, 2014 WL 261837, at *1 (N.D. Cal. Jan. 23, 2014). The moving party bears the burden of demonstrating that a stay is appropriate. *Netlist, Inc. v. Smart Storage Sys., Inc.*, No. 13-cv-05889-YGR, 2014 WL 4145412, at *1 (N.D. Cal. Aug. 21, 2014).

### B.    Stage of the Litigation

The first factor the Court considers is whether the litigation is at an early stage. *See AT&T Intellectual Property I v. Tivo, Inc.*, 774 F. Supp. 2d 1049, 1052 (N.D. Cal. 2011). Specifically, courts consider "whether discovery is complete and whether a trial date has been set." *Evolutionary Intelligence*, 2014 WL 261837, at *1. "A stay is particularly appropriate for cases in the initial stages of litigation or in which there has been little discovery." *Ho Keung Tse v. Apple Inc.*, No. C 06-06573 SBA, 2007 WL 2904279, at *2 (N.D. Cal. Oct. 4, 2007)

SPI does not dispute that this case is in an early stage. Virtually all the activity in this action (*e.g.*, the filing of the answer and counterclaims, the first case management conference, service of SPI's infringement contentions) has occurred in the last three months. Courts have found that this factor weighs in favor of a stay even where litigation has progressed substantially further than the instant action. *See Cypress Semiconductor Corp. v. LG Elecs., Inc.*, No. 13-cv-04034-SBA, 2014 WL 5477795, at *2 (N.D. Cal. Oct. 29, 2014) (finding that this factor weighs in favor of a stay where claim construction briefing was complete but "[t]here has been no dispositive motion practice, the claims have not been construed, and no deadlines for completing discovery, motion practice or trial have been set"); *PersonalWeb Techs., LLC v. Facebook, Inc.*,

3

No. 13-cv-01356-EJD, 2014 WL 116340, at *3 (N.D. Cal. Jan. 13, 2014) (finding that this factor weighs in favor of a stay where "a claim construction order has been issued and the close of fact discovery is fast approaching" but "a substantial portion of the work—expert discovery, summary judgment, pre-trial preparation, and trial itself—lies ahead"); *AT&T*, 774 F. Supp. 2d at 1052 (finding that this factor weighed in favor of a stay where the parties had not exchanged expert reports, conducted depositions, or filed any dispositive motions, and where claim construction had been fully briefed but no hearing had been held and no trial date had been set).

Given the early stage of this litigation, the Court finds that this factor weighs heavily in favor of a stay.

### C.  Simplification of the Case

The second factor that the Court considers is whether granting a stay could simplify the litigation.  "The standard is simplification of the district court case, not complete elimination of it by the PTAB."  *LELO, Inc. v. Standard Innovation (US) Corp.*, No. 13-cv-01393-JD, 2014 WL 2879851, at *3 (N.D. Cal. June 24, 2014).  Granting a stay pending IPR is "particularly" likely to simplify the case "when a party has obtained PTO review of each of the asserted claims in the patents-in-suit."  *Evolutionary Intelligence*, 2014 WL 261837, at *2.

Staying the case pending the outcome of IPR could simplify the case by rendering some or all of Plaintiff's infringement claims moot, estopping Ojmar from asserting any arguments it raised or reasonably could have raised in the IPR, and providing the Court with PTAB's expert opinion on the claims at issue.  *See Evolutionary Intelligence*, 2014 WL 261837, at *2.  Indeed, even if the PTAB decides to institute review and affirms the validity of every asserted claim, the case would still be simplified because "such a strong showing would assist in streamlining the presentation of evidence and benefit the trier of fact by providing the expert opinion of the PTO." *PersonalWeb Techs.*, 2014 WL 116340, at *4.

SPI argues that the motion to stay should be denied because: (1) Ojmar has offered no evidence that the PTAB is likely to institute a proceeding in response to its petition; and (2) Ojmar would have to invalidate all three claims upon which it is alleged to infringe—or, in SPI's words, "hit a grand slam"—in order to avoid any surviving claims. Dkt. No. 40 ("Opp.") at 2.  The Court

does not find either argument persuasive.

First, "it is not uncommon for [courts] to grant stays pending reexamination prior to the PTO deciding to reexamine the patent." *Pragmatus AV*, 2011 WL 4802958, at *3 (collecting cases). Either party may file a motion to lift the stay if any part of the petitions for IPR are denied—so "any concern that the motion[] [is] premature is alleviated by the short time frame of the initial stay and the Court's willingness to reevaluate the stay if *inter partes* review is not instituted for all of the asserted claims." *Evolutionary Intelligence*, 2014 WL 261837, at *3; *see also Roche Molecular Sys., Inc. v. Cepheid*, No. C-14-3228-EDL, 2015 WL 124523, at *4 (N.D. Cal. Jan. 7, 2015) ("The early status of the IPR proceeding does not change this result. Several cases have granted a stay even where, as here, the PTAB has not yet decided whether to institute an IPR.").

Second, and contrary to SPI's contention, "[a] stay is not contingent upon the reexamination proceeding resolving every claim and issue in this action. Rather, the salient question is whether the reexamination will aid the Court or otherwise streamline the litigation." *Evolutionary Intelligence*, 2014 WL 261837, at *5 (citation omitted). Of course, if the PTAB cancels all of the asserted claims in the '180 Patent, this action will be rendered moot. However, a ruling from the PTAB that cancels or narrows only some of the asserted claims may substantially reduce the scope of this action. *See id.*; *AT&T*, 774 F. Supp. 2d at 1053. Even if the PTAB does not invalidate any claims, the PTAB's claim construction and invalidity analyses "would likely prove helpful to this Court," whether or not the standard applied is identical to the one this Court must apply in the litigation. *Black Hills Media, LLC v. Pioneer Elecs. (USA) Inc.*, No. 14-cv-00471-SJO, 2014 WL 4638170, at *6 (C.D. Cal. May 8, 2014).

The Court finds that this factor also weighs heavily in favor of granting the stay. If instituted, IPR is likely to greatly simplify the case. Were the Court to deny the stay until a decision on institution is made, the parties and the Court would expend significant resources on claim construction proceedings that could eventually be mooted by the IPR decision. The Court finds that staying the case pending the PTO's decision whether to institute IPR is the most efficient use of resources. *See PersonalWeb Techs.*, 2014 WL 116340, at *4 (finding that four-

month delay before PTO's institution decision would issue was "relatively short" and did not outweigh anticipated simplification of issues); *Delphix*, 2014 WL 6068407, at *2 ("At a minimum, instituting a brief, limited stay of approximately five months to see whether and how the PTAB will act on Defendant's IPR petitions will conserve judicial resources and avoid inconsistent results.").

### D. Undue Prejudice

The third factor for the Court to consider is whether SPI will be unduly prejudiced by a stay. SPI argues that Ojmar intentionally delayed filing its IPR petition for six months, which "caused considerable consumption of this Court's time by virtue of having already undertaken a case management concurrence, having invoked the jurisdiction of the Court for its own benefit to file a counter-claim against plaintiff, and after this Court has taken its time and energy to set a complete scheduling of this case in compliance with the local patent rules." Opp. at 3.

SPI's argument is not well taken. While this action was filed in November of 2014, it appears that Ojmar was not actually served the complaint for several months, and, in any event, the case did not "begin" in a practical sense until March 4, 2015—the extended deadline for Ojmar to file its responsive pleading as agreed to by SPI. Dkt. No. 13. Moreover, Ojmar was transparent about its intention to move for a stay from the outset of this litigation. In the parties' March 2, 2015 Joint Case Management Statement (filed two days before Ojmar answered SPI's complaint), Ojmar represented that it "may" move for a stay pending IPR. Dkt. No. 19 at 2. In the parties' Supplemental Joint Case Management Statement filed on March 25, 2015, Ojmar alerted both the Court and SPI that it now "anticipate[d] filing a motion to stay." Dkt. No. 23 at 2. During the April 1, 2015 Case Management Conference, Ojmar committed to filing both its IPR petition with the PTO and a motion to stay with this Court by no later than April 30, 2015. Ojmar hit both targets. *See* Dkt. No. 38 and 39-1.

Accordingly, the Court does not find Ojmar's motion to stay to be untimely or the product of "delay tactics" as argued by SPI. Opp. at 3. In fact, Ojmar filed its petition for IPR (and the instant motion to stay) with more than six months remaining of the one-year statutory limit. 35 U.S.C. § 315(b) (providing defendants one year from the date of service of the complaint to

6

1   submit a petition for IPR); *see also Asetek Holdings, Inc. v. Cooler Master Co., Ltd.,* No. 13-cv-
2   00457-JST, 2014 WL 1350813, at * 4 (N.D. Cal. Apr. 3, 2014). ("Delay alone [within the
3   statutory deadline] does not usually constitute undue prejudice because parties having protection
4   under the patent statutory framework may not complain of the rights afforded to others by that
5   same statutory framework.") (citations and internal quotations omitted).  Courts routinely find
6   even greater "delays" in seeking IPR to be reasonable.  *See, e.g., Software Rights Archive, LLC v.*
7   *Facebook, Inc.*, No. 12-cv- 03970-RMW, 2013 WL 5225522, at *6 (N.D. Cal. Sept. 17, 2013)
8   ("Although defendants did wait nearly a year to file the IPR petitions, they properly filed the
9   petitions within the statutory time frame, and the delay was not unreasonable under the facts
10  here."); *Cypress Semiconductor*, 2014 WL 5477795, at *3 (finding that the fact that defendant
11  filed its IPR petitions close to the end of the statutory deadline "does not demonstrate undue
12  delay").

13   At base, the only fact that could potentially weigh against a stay of this action is that SPI
14  and Ojmar are direct competitors.  *Asetek*, 2014 WL 1350813, at *5 ("Courts recognize that, when
15  the parties are direct competitors, the risk of prejudice is higher to the non-moving party than it
16  would be otherwise.") (citations omitted).  However, courts in this district require "evidence to
17  substantiate an argument that direct competition will result in prejudice to the non-moving party."
18  *Cypress Semiconductor Corp. v. GSI Tech., Inc.*, No. 13-CV-02013-JST, 2014 WL 5021100, at *5
19  (N.D. Cal. Oct. 7, 2014) (collecting cases).  Here, SPI submitted a declaration from Asil
20  Gokcebay, (the President and CEO of SPI), which estimates that the continued sales of Ojmar's
21  allegedly infringing products would substantially reduce SPI's sales of its competing products,
22  resulting in approximately $5.9 million in lost profits over the 2015 and 2016 years.  *See* Dkt. No.
23  41 ("Gokcebay Dec.") at ¶7.  However, Gokcebay's declaration provides no indication that his
24  estimate rises above the level of speculation.  In essence, Gokcebay projected SPI's expected
25  annual revenues into the future and then "[b]ased upon the allegations of the counter-claim, and
26  [his] understanding of the market and the effects of the Ojmar product on our sales," performed an
27  unexplained and unsupported calculation to reach a total loss of revenue of approximately $8.8
28  million, which (assuming a "reasonable margin based upon experience") led to a $5.9 million loss

United States District Court
Northern District of California

in profits. *Id*. at ¶ 5-7.

Gokcebay's "back of the napkin" estimate based on his reading of the pleadings does not provide this Court sufficient evidence to evaluate the degree of prejudice that SPI may suffer as the result of a stay. *See Asetek,* 2014 WL 1350813, at *5 (finding that without more evidence than the declaration of the Plaintiff's CEO tending to show that the plaintiff would suffer prejudice as a result of a stay due to the parties' status as direct competitors, "a stay could produce undue prejudice, although the degree of prejudice is hard to estimate on this record."). Gockebay's estimate is particularly difficult to evaluate given that SPI did not identify any of its own products that practice the '180 Patent in its infringement contentions as called for by this District's Patent Local Rule 3-1(g). *See* Dkt. No. 43-1, Ex. A at 2. Accordingly, as in *Asetek,* while the Court can assume that SPI may suffer some prejudice as a result of a stay due to the parties' status as direct competitors, the Court cannot assess the degree of prejudice on the record provided.

In sum, the undue prejudice factor is either neutral or weighs slightly against a stay of this action. On the one hand, Ojmar expeditiously petitioned for IPR and simultaneously moved this Court for a stay pending the PTAB's decision. On the other, Ojmar and SPI are direct competitors, although the extent of the possible harm based on that relationship has not been adequately presented to the Court.

\*    \*    \*

After weighing the three factors outlined above, the Court finds that a stay is warranted here. The first two factors strongly weigh in favor of a stay, while the third factor is either neutral or cuts only slightly against staying this action. Accordingly, a stay will "effectuate[] the intent of the AIA by allowing the agency with expertise to have the first crack at cancelling any claims that should not have issued in the patents-in-suit before costly litigation continues." *Software Rights Archive*, 2013 WL 5225522, at *6.

### III.  SPI'S OTHER ARGUMENTS

SPI devotes the majority of its Opposition to an attack on the constitutionality of the AIA's IPR process. Opp. at 4-9. This argument is irrelevant to the question of whether a stay should issue. SPI may challenge the actions of the PTAB through any available legal channel if and

8

when it receives an adverse decision.

SPI also argues that—should the Court stay this action— it should either: (1) require Ojmar to post a bond as security for SPI's lost sales during the IPR process; or (2) enjoin Ojmar from selling its allegedly infringing products. The Court disagrees. SPI's bare assertion that Ojmar is a "shell company" that will immediately transfer funds to its foreign parent to avoid a potential judgment, Mot. at 1, is insufficient to support a bond requirement. There is no actual evidence of inability or unwillingness to satisfy a judgment in the record. Moreover, SPI has cited no case decided after the passage of the AIA where a Court has required the moving party to post a bond upon issuance of a stay pending IPR. *See Brixham Solutions Ltd. v. Juniper Networks, Inc.*, No. 13-CV-00616-JCS, 2014 WL 1677991, at *2 (N.D. Cal. Apr. 28, 2014) ("[T]he potential delay associated with inter partes review is not significant in comparison to the post-grant review procedures that existed prior to the enactment of the America Invents Act."). Accordingly, based upon the evidence presented by the parties, the Court finds that neither a bond requirement nor an injunction preventing Ojmar's sales of the allegedly infringing products is warranted during the pendency of the stay.

## IV.   CONCLUSION

For the foregoing reasons, the Court **GRANTS** Ojmar's motion to stay the case pending decision by the PTO whether to institute IPR of the claims asserted in Ojmar's petition. The parties shall file a joint status report within five days of the issuance of PTO's decision on whether to institute IPR challenging the patent-in-suit, informing the Court of the PTO's decision. At that time, the Court will issue an order addressing further proceedings in the case.

**IT IS SO ORDERED.**

Dated: May 29, 2015

HAYWOOD S. GILLIAM, JR.
United States District Judge